UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:15-cr-00028-RLY-CMM-01 |
| HEATH B. CLARK, | ) ) | No. 3:16-cr-00044-RLY-CMM-01 |
| Defendant. | ) ) | No. 3:16-cr-00045-RLY-CMM-01 |

**Entry Denying Defendant's Motion for Compassionate Release**

Defendant Heath Clark has moved for compassionate release in the above-captioned cases,[1] requesting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons." Dkt. 63. For the reasons stated below, the motion is **denied**.

**I.
Background**

On January 23, 2017, Mr. Clark pleaded guilty to three counts of Bank Robbery. Dkt. 39. Based on a criminal history category of VI, the court determined Mr. Clark's sentencing guideline range to be 100 to 125 months. Dkt. 48 p. 52. He was sentenced to 100 months of incarceration, followed by three years of supervised release. Dkt. 40.

Mr. Clark is currently confined by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). His current projected release date is May 25, 2022. Mr. Clark is also subject to a detainer lodged against him by the Brentwood

---

[1] Mr. Clark filed identical motions in the above-captioned cases. Because the claims and the relief sought in the motions are the same, the Court considers them together. For ease of reference, except where otherwise noted, all docket citations in this Entry are to Case No. 3:15-cr-28-RLY-CMM-01.

Tennessee Police Department and another filed on October 22, 2018 by the State of Tennessee for a parole violation.

Mr. Clark filed a *pro se* motion for compassionate release on May 5, 2020. Dkt 63. Counsel filed a brief in support of his motion on July 20, 2020. Dkt. 80. The United States responded on August 3, 2020, dkt. 83, and counsel replied on August 10, 2020. Dkt. 84.

## II.
### Discussion

Mr. Clark seeks relief under § 603(b) of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). *See* 132 Stat. at 5239. That section provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]

Congress has directed the United States Sentencing Commission ("the Commission") to further define "extraordinary and compelling reasons." 28 U.S.C. § 994(t) ("[T]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific

---

[2] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). The relevant policy statement appears at United States Sentencing Guidelines Manual §1B1.13. As relevant here, the policy statement provides that a court may reduce a sentence if,

> after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . [(1)] extraordinary and compelling reasons warrant the reduction . . . ; (2) [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) [t]he reduction is consistent with this policy statement.

U.S.S.G. Manual § 1B1.13.

**A. Extraordinary and Compelling Reasons**

The application notes to the policy statement identify four possible "extraordinary and compelling reasons" justifying a sentence reduction. *Id.*, Application Note 1. These are: (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; (C) certain family circumstances and (D) for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[3] *Id.* The latter provision is sometimes referred to as the "catchall provision." Mr. Clark relies on the catchall provision arguing that extraordinary and compelling reasons justify compassionate release because he has underlying health conditions that likely cause a high risk for

---

[3] This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. This court has held that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for purposes of the catchall provision. *See United States v. Quintanilla*, No. 3:00-cr-25-RLY-MPB-1, Dkt. 72 at 5–6 (S.D. Ind. July 9, 2020).

severe illness if he contracts COVID-19. Specifically, Mr. Clark suffers from type 2 diabetes, hypertension, obesity, and depression.

The United States argues that Mr. Clark's conditions are not sufficiently serious to amount to extraordinary and compelling reasons supporting compassionate release.[4] The United States also argues that because Mr. Clark is subject to two detainers in Tennessee, he cannot show extraordinary and compelling reasons because releasing him from the BOP would likely not result in his release from custody. But even if the court were to find that Mr. Clark has shown extraordinary and compelling reasons, that conclusion does not, however, end the analysis because the statute also directs the Court to consider the sentencing factors in 18 U.S.C. § 3553(a), to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). The court has considered the sentencing factors in § 3553(a), to the extent they are applicable, and concludes that Mr. Clark's motion for sentence reduction must be denied.

**B. Section 3553(a) Factors**

The court finds that the applicable § 3553(a) sentencing factors weigh against granting Mr. Clark compassionate release.

The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of

---

[4] The United States also argues that Mr. Clark waived his right to file a § 3582 motion in his guilty plea, but the court need not reach this argument because it finds that Mr. Clark's motion should be denied on its merits.

4

sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The court will address those factors that are applicable to Mr. Clark's motion.

### 1. Nature and Circumstances of the Offense

First, the court finds that Mr. Clark's crimes were very serious. Mr. Clark committed three separate bank robberies in Georgia, Indiana, and Missouri, in which he produced threatening notes to bank tellers to obtain cash from each bank. Dkt. 36 ¶¶ 1-6.

In Georgia, Mr. Clark handed the teller a note stating, "You are being robbed. I have a gun." And then told her "You are being robbed. I have a gun." And "If you don't empty your drawer, I am going to shoot you." Dkt. 34 ¶ 19C. He also told the teller that if she raised an alarm, pushed an alarm button, or put a GPS device with the money, he would shoot her. *Id.* Finally, when the teller was getting the currency from her drawer, Mr. Clark stated, "You have six seconds to empty your drawer before I shoot you."[5] *Id.*

In Indiana, Mr. Clark slid a piece of paper to the teller that stated, "Don't hit the fucking alarm" and then stated, "Give me all the money. I want the big bills. I want her drawer, too." *Id.* ¶19A. During this time, the manager did not see a weapon but thought Mr. Clark had one because he held his hand in his pocket during the robbery. *Id.*

---

[5] While Mr. Clark stated that he had a gun during this robbery, he did not brandish a gun or plead guilty to having one and the United States does not argue that he had one.

In Missouri, Mr. Clark showed the teller a note that said, "Don't hit the alarm or I will fucking kill you." *Id.* ¶ 19B. The teller took all the cash out of the drawer and gave it to Mr. Clark. *Id.*

## 2. History and Characteristics of the Defendant

Mr. Clark has an extensive criminal history, which includes four prior felony convictions for burglary and two felony convictions involving theft. Dkt. 36 ¶¶ 58 (1998 felony burglary in Marion County, Indiana), 59 (1998 felony burglary in Johnson County, Indiana), 63 (2005 felony burglary in Marshall County, Tennessee), 64 (2005 felony burglary in Marshall County, Tennessee), He also has criminal convictions for carrying a handgun without a license, *id.* ¶ 60, resisting law enforcement, evading arrest, false statement, and harassment. *Id.* ¶¶ 61-62, 67. In addition, Mr. Clark committed the crimes in this case while on parole. For his first burglary conviction in 1998, he received a sentence of 4 years in the Indiana Department of Correction ("IDOC") that was suspended to probation. *Id.* ¶ 58. However, probation was ultimately revoked in 2001, and he was sentenced to 3 years in IDOC. *Id.* Similarly, for his other burglary conviction in 1998, he had his IDOC time suspended to probation but had that revoked. *Id.* ¶ 59.

The court recognizes that Mr. Clark has taken steps to rehabilitate himself while in prison. He is currently enrolled in the Life Connections Program and has taken the BOP's Challenge Program, has completed 20 adult education courses, and has been a chairperson for Alcoholics Anonymous and Narcotics Anonymous meetings. He also has a job as a Life Connections program clerk.

In addition, Mr. Clark is currently 48 years old. He suffers from a number of health conditions including obesity, diabetes, and hypertension.[6] Those conditions appear to be, for the most part, adequately managed in the institutional setting. *See* dkt. 80-2 p. 29-30 (showing that Mr. Clark's blood pressure is in the normal range); dkt. 80-2 p. 30-31 (showing Mr. Clark's most recent BMI is 31)[7]; *but see* dkt. 80-2 p 5, 17, 23 (showing that Mr. Clark's diabetes is not well controlled; stating that he is not compliant with diet and exercise). That said, his conditions mean that he may be at increased risk of becoming seriously ill if he contracts COVID-19. The BOP has implemented a number of measures to prevent the spread of the virus, *see* dkt. 83 at 20-22, but courts have recognized that the nature of prisons presents an outsized risk that "the COVID-19 contagion, once it gains entry, will spread," *see, e.g.*, *United States v. Hernandez*, __ F. Supp. 3d ___, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020). The court is aware of the risks to Mr. Clark and has weighed them in its consideration of the § 3553(a) factors.

### 3. Protecting the Public from Future Crimes

It is generally true that the risk of recidivism decreases with age. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* 10 (Dec. 2017) ("[T]hose oldest at age of release, over 60 years old, had the lowest recidivism rate

---

[6] The Centers for Disease Control and Prevention ("CDC") has explained that obesity and diabetes increase a person's risk for severe illness from COVID-19 and that hypertension might increase a person's risk for severe illness. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions (last visited August 13, 2020).

[7] Mr. Clark's height according to his PSR is 5'7". Dkt. 36 ¶ 85. His weight as of June 22, 2020 was 197.8 pounds, dkt. 80-2 p. 30, for a BMI of 31. A BMI of 30 or above is considered obese.

(16.0%).").[8] But defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. United States Sentencing Commission, *Recidivism Among Federal Violent Offenders* 16, 27 (Jan. 2019) ("Robbery offenders recidivated at a higher rate, more quickly, and for more serious offenses than did the other . . . violent instant offenders.").[9] This pattern holds true even as defendants age: "Recidivism rates for robbery offenders increased until reaching age 50 at the time of release (rising from 66.2% for those released under the age of 26 to 72.2% for those released at age 41 through 50). The recidivism rate for robbery offenders released after age 50 is almost twice as high as the rate for all other violent instant offenders (47.0% compared to 26.9%)." *Id.* at 27. Mr. Clark is 48 years old and, thereby presents a high statistical risk of recidivism. Thus, the Court concludes that Mr. Clark's chances of recidivism weigh against reducing his sentence.

### 4. Unwarranted Sentencing Disparities

Mr. Clark was sentenced to 100 months imprisonment, which was at the low end of the appliable guidelines sentencing range. If the court were to grant Mr. Clark's motion, his sentence would then be approximately 25 months under the low end of the guideline range and would therefore create a significant sentencing disparity.

Given its consideration of the applicable § 3553(a) factors, the court concludes that the risk to Mr. Clark from the COVID-19 pandemic is not enough to tip the scale in favor of release. *See United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)

---

[8]This report is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited Aug. 13, 2020).

[9]This report is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf (last visited Aug. 13, 2020).

(in evaluating a motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence).

### III.
### CONCLUSION

For the reasons stated above, Mr. Clark's Motion for Compassionate Release, No. 3-15-cr-28-RLY-CMM-1, dkt. [63], No. 3:16-cr-44-RLY-CMM-1, dkt. [32], No. 3:16-cr-45-RLY-CMM-1, dkt. [32], is **denied**.

**IT IS SO ORDERED.**

Date:   8/14/2020

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel